2009 WY 14

In the Matter of the Worker's Compensation Claim of Kathleen HORN–DALTON, an Employee of Southwest Wyoming Rehabilitation Center:

Kathleen E. Horn–Dalton, Appellant (Petitioner),

v.

State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).

No. S–07–0276.

Supreme Court of Wyoming.

Feb. 5, 2009.

---

Representing Appellant: Lynn Boak of Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Brandon W. Snyder, Special Assistant Attorney General, MacPherson, Kelly & Thompson, LLC.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Appellant, Kathleen Horn–Dalton, claims that the district court erred when it upheld an Office of Administrative Hearings' (OAH) decision in favor of the Workers' Safety and Compensation Division (Division), which determined that Appellant was not eligible for benefits. The district court upheld the OAH's dismissal of Appellant's claim because it found that Appellant did not timely file her claim and that Appellant was not eligible for benefits because she did not prove that her illness was work related. We affirm.

## ISSUES

[¶ 2]  1. Was the OAH's finding that Appellant's claim was untimely supported by substantial evidence?

2. Was the OAH's conclusion that Appellant failed to prove that her untimely filing did not prejudice her employer or the division against the great weight of the evidence, and did the OAH properly apply the statutory presumption to deny Appellant's claim?

3. Was the OAH's finding that Appellant failed to prove that her injury was work related against the great weight of the evidence?

## FACTS

[¶ 3]   Appellant began work for the Southwest Wyoming Rehabilitation Center (SWRC) in August of 1975.   Appellant served as Executive Director and later President of the organization.   In 1999, relations between Appellant and the Board of Directors of SWRC began to deteriorate. There were several unpleasant confrontations and the Board attempted to fire Appellant while she was out of town.   The Wyoming Attorney General's office intervened in 2000 because the Board was not operating according to its own corporate requirements and the Board was reorganized.   However, relations between Appellant and the Board continued to deteriorate.   The tension came to a head at a Board meeting in September of 2003, in which two Board members accused Appellant of a number of improprieties related to her position.   Appellant became physically ill after the meeting and vomited several times.   Several Board members resigned after the meeting, including those who had been most aggressive toward Appellant. In June of 2004, the Board requested Appellant's resignation.

[¶ 4]   Appellant testified that, although she had been experiencing "pain and physical problems" for some time, she experienced increasing exhaustion and body aches after the September 30 meeting.   Appellant left for a vacation shortly after the meeting. During her vacation, she fell and injured her knee in a grocery store.   After the fall, Appellant experienced severe and increasing pain in her neck, back and hips.   She sought relief from a series of orthopedic physicians, believing her symptoms to be a result of the fall.   In March of 2004, Appellant visited a nurse practitioner for a regular checkup. The nurse practitioner informed Appellant that her symptoms were consistent with a diagnosis of fibromyalgia, and referred Appellant to a specialist.   Appellant's nurse practitioner also provided Appellant with several prescriptions to manage her symptoms.

[¶ 5]   Appellant was not able to get an appointment with a fibromyalgia specialist for several months.   Appellant testified that

she mentioned that she had fibromyalgia in a phone call with the corporate attorney for SWRC before she was asked to resign, and believed she had informed the human resource director of her condition in a conversation about her work schedule.   Appellant filled out a Report of Injury dated July 15, 2004, claiming that her hostile work environment had caused stress-related illness, including fibromyalgia, depression, panic attacks, and anxiety disorder.[1]   In late 2004, a specialist confirmed the diagnosis of fibromyalgia.

## STANDARD OF REVIEW

[¶ 6]   The standards of review for administrative decisions are set forth in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007) as follows:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.   The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed;   and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law;   or

(E) Unsupported by substantial evidence in a case reviewed on the record

---

1.   Appellant also filed a separate claim for De Quervain's tenosynovitis, which claim was denied.   Appellant has not contested that denial in this appeal.

of an agency hearing provided by statute.

[¶ 7] We set forth in detail the proper application of these standards in *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶¶ 20–26, 188 P.3d 554, 561–62 (Wyo.2008). "The finder of fact is charged with determining the time and cause of a compensable injury; however, whether an employee's claim is to be barred for failure to timely file notice or a claim is a mixed question of fact and law." *Iverson v. Frost Constr.*, 2003 WY 162, ¶ 16, 81 P.3d 190, 195 (Wyo.2003). We will review *de novo* the question of law, whether the OAH correctly applied the statutory presumption of denial for untimely filing. *Dale*, 2008 WY 84, ¶ 26, 188 P.3d at 561–62. We will determine if the findings of fact underlying that legal conclusion are supported by substantial evidence. *Id.* at ¶ 25, 188 P.3d at 561. We will review the OAH's finding that Appellant did not meet her burden of proof to determine "whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." *Id.* at ¶ 22, 188 P.3d at 561. "Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it." *Id.*

## DISCUSSION

[¶ 8] The hearing examiner found that Appellant failed timely to report her injury as required by statute. He also found that Appellant's claim was presumptively denied because she failed to show that her employer and the division were not prejudiced as a result of her untimely claim. However, the hearing examiner addressed the merits of Appellant's claim and found that she had failed to prove that she had a compensable work-related injury.

### Timeliness

[¶ 9] (a) As soon as is practical but not later than seventy-two (72) hours after the general nature of the injury became apparent, an injured employee shall, in writing or by other means approved by the department, report the occurrence and general nature of the accident or injury to the employer. In addition, the injured employee shall within ten (10) days after the injury became apparent, file an injury report with the employer and the division in a manner and containing information prescribed by division rule and regulation. . . .

. . . .

(c) Failure of the injured employee, any dependent or personal representative to report the accident or injury to the employer and to file the injury report in accordance with subsection (a) of this section is a presumption that the claim shall be denied. The presumption may be rebutted if the employee establishes by clear and convincing evidence a lack of prejudice to the employer or division in investigating the injury and in monitoring medical treatment.

Wyo. Stat. Ann. § 27–14–502 (LexisNexis 2007).

[¶ 10] Our law on determining the date of a compensable injury is well-established. We have consistently held that when a correct diagnosis or prognosis of present or likely future disability is communicated to the claimant, the injury is discovered, it is compensable, and the statute of limitations begins to run. When determining the time a particular injury became compensable, it should be asked: When would a reasonable person, under the circumstances, have understood the full extent and nature of the injury and that the injury was related to his or her employment?

*Iverson*, 2003 WY 162, ¶ 15, 81 P.3d at 195 (citations and quotation marks omitted).

[¶ 11] Appellant's nurse practitioner informed her on March 22, 2004, that her symptoms were consistent with a diagnosis of fibromyalgia. Appellant indicated during the hearing that she associated her symptoms with job-related stress from that date. It was not unreasonable for the hearing examiner to conclude that Appellant knew she had a compensable, work-related injury on March 22, 2004.

[¶ 12] Appellant filled out and submitted a Report of Injury on July 15, 2004. She admits that she did not report her injury

to her employer in writing. Appellant claims that she mentioned her illness in a conference call in April of 2004, although she cannot recall the date or details of that conversation. Even if it occurred, that verbal "report" would have been outside the seventy-two hour reporting period set forth in Wyo. Stat. Ann. § 27–14–502(a) for initial notice to an employer. Therefore, it was not unreasonable for the hearing examiner to conclude that Appellant failed to comply with the requirements of Wyo. Stat. Ann. § 27–14–502(a) by failing to report her injury to her employer within seventy-two hours and by failing to file a written injury report within ten days. *See Wesaw v. Quality Maintenance*, 2001 WY 17, ¶ 14, 19 P.3d 500, 506 (Wyo.2001). The hearing examiner was correct in presuming that the claim should be denied unless Appellant could show that neither the Division nor her employer was prejudiced by Appellant's failure timely to report her injury.

### *Prejudice*

■ [¶ 13] Appellant claims that her failure to report the injury in a timely manner did not prejudice the Division's or her employer's ability to investigate the injury and monitor Appellant's medical treatment. Neither the Division nor the employer has made any claim that it was unable to investigate the factual circumstances underlying Appellant's claim. We have found prejudice where the Division or the employer is denied access to medical records because of a claimant's failure timely to report an injury and where early monitoring of a claimant's treatment could have affected the amount of a claim. *See Beitel v. State ex rel. Wyo. Workers' Comp. Div.*, 991 P.2d 1242, 1247–48 (Wyo. 1999). We have generally found no prejudice where there was no range of treatment available and where the ability to impose work restrictions and monitor treatment would not have benefited the employer or the Division. *See In re Worker's Compensation Claim of Payne*, 993 P.2d 313, 318 (Wyo.1999); *State ex rel. Workers' Safety & Comp. Div. v. Garl,*

2001 WY 59, ¶¶ 17–18, 26 P.3d 1029, 1034 (Wyo.2001).

[¶ 14] Appellant presented evidence that the treatment for fibromyalgia consists largely of pain management and that she has not had any aggressive or surgical treatments related to the illness. There is no indication in the record that any other, let alone any less aggressive, treatment options were available. There is also no indication that work restrictions could have affected Appellant's condition in any way once she was diagnosed with fibromyalgia and had acute onset of symptoms. There was no evidence in the record that the division or the employer was prejudiced by Appellant's failure timely to file her injury report. Under those circumstances, it was not reasonable for the hearing examiner to conclude that Appellant did not meet her burden of showing by clear and convincing evidence that the failure timely to report her injury did not prejudice her employer or the division.

### *Work–Related Injury*

■ [¶ 15] "An employee-claimant in a worker's compensation case has the burden of proving all the statutory elements which comprise a compensable injury. This burden includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment." *Hanks v. City of Casper*, 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo.2001) (citations omitted). Appellant claims that the stress of her employment, specifically the September 2003 meeting where several Board members became extremely abusive, triggered her fibromyalgia syndrome.

[¶ 16] Appellant's doctor testified by deposition as an expert on fibromyalgia. The doctor testified that she believed that the stress [2] from Appellant's job was a significant triggering factor in her fibromyalgia. However, she also testified that fibromyalgia is an immensely complex and little understood syndrome and that the causes of the illness

---

**2.** We do not decide whether a physical ailment caused by job-related stress is compensable under the worker's compensation statutes. The parties did not brief this issue sufficiently for us

to decide such an important question of law and we need not reach the question because Appellant has failed to prove another essential element of her claim.

are not clear. Appellant had a number of other underlying conditions that her doctor considered contributing factors to her fibromyalgia. Appellant's doctor also did not believe that Appellant's fibromyalgia was directly triggered by the Board meeting, but instead testified that the condition would have emerged over the course of years. This testimony supports the conclusion that Appellant's injury occurred over a substantial period of time and is subject to the heightened burden of proof of Wyo. Stat. Ann. § 27–14–603(a) (LexisNexis 2007), which states as follows:

> (a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of the evidence that:
>
> > (i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;
> >
> > (ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;
> >
> > (iii) The injury can fairly be traced to the employment as a proximate cause;
> >
> > (iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and
> >
> > (v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

[¶ 17] Another doctor reviewed Appellant's files and pointed out that there are no studies that conclusively explain the causes of fibromyalgia or how it relates to stress. That doctor pointed to several chronic conditions from which Appellant suffered that made Appellant susceptible to fibromyalgia. The record shows that Appellant suffered considerable stress outside the office at various times, including several stressful incidents close to the onset of her symptoms.

[¶ 18] In *Hanks v. City of Casper*, 2001 WY 4, 16 P.3d 710 (Wyo.2001), we upheld a determination similar to that of the hearing examiner in this case. The claimant in *Hanks* presented medical testimony that a work-related incident triggered her fibromyalgia. *Id.* at ¶ 8, 16 P.3d at 711. However, we upheld the OAH's determination that the claimant had not met her burden of proof because the doctor's testimony was equivocal and because the doctor testified that a triggering event does not cause fibromyalgia. *Id.* at ¶ 9, 16 P.3d at 711. Given the heightened burden of proof that Appellant faced, and the inconclusive medical testimony, we find that the hearing examiner could reasonably have concluded that Appellant failed to meet her burden of proving that her injury was directly related to her employment.

### CONCLUSION

[¶ 19] The OAH reasonably determined that Appellant's claim was not timely filed. However, the OAH erred when it applied the statutory presumption to deny Appellant's claim because its conclusion that Appellant failed to prove that neither her employer nor the Division was prejudiced by the delay was against the great weight of the evidence. The OAH's determination that Appellant failed to meet her burden of proof on the issue of whether her injury resulted from her employment was not against the great weight of the evidence. The OAH's order is affirmed.